IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RUDIS LISBETH THOMAS,

        Plaintiff *pro se*,

v.

JPMORGAN CHASE,

        Defendant.

\*                          

\*

\*          Civil Action No.: RDB 05-1573

\*

\*

\*

\*

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

This action arises out of a Complaint that Rudis Lisbeth Thomas ("Plaintiff" or "Thomas") filed *pro se* against JPMorgan Chase ("Defendant" or "JPMorgan"). The Complaint appears to allege that Thomas worked in a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and that JPMorgan wrongfully discharged Thomas because of her national origin in violation of Title VII. Pending before this court is JPMorgan's Motion to Dismiss or, in the Alternative, for Summary Judgment. The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons that follow, Defendant's Motion for Summary Judgment is GRANTED.

## BACKGROUND

This Court reviews the facts of this case in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). On May 3, 2002, Thomas, a woman of Guatemalan-Hispanic origin, was hired by JPMorgan to work as a Commercial Operations Supervisor in Baltimore, Maryland. (Wallace's Aff. p. 1.) In

the Spring of 2004,  JPMorgan also hired Rebecca Wallace ("Wallace"), with whom Thomas had worked at other jobs.  (Wallace's Aff. p. 1.)  Shortly thereafter, Wallace became Thomas's immediate supervisor.

In April 2004, Chris Lang was hired by JPMorgan as Wallace's superior.  (*See* Pl.'s Compl.)  Around this time, the management of the Baltimore office began to emphasize the improvement of its employees' communication skills.  (*See* Pl.'s Compl.; Ezell's Aff.  p. 2.)  Thomas contends that this emphasis was directed at her specifically, and that it derived from the influence of Chris Lang.  (*See* Pl.'s Compl.)  On June 4, 2004, Wallace placed Thomas on a career development plan to correct previously noted poor work performance.  (*See* EEOC Letter dated March 18, 2005, attached as unnumbered exhibit to Plaintiff's Complaint ("EEOC Letter").)  On June 24, 2004, Thomas's team apparently missed a production deadline for client Washington Gas.  (EEOC Letter; Ezell's Aff. p. 3.)  On June 28, 2004, JPMorgan called a meeting to terminate Thomas, and, at the meeting, accepted Plaintiff's request to resign.  (*See* Wallace's Aff. p. 5; EEOC Letter.)

On November 4, 2004, Plaintiff filed a charge of discriminatory discharge on the basis of national origin against Defendant with the Maryland Commission on Human Relations and the Equal Employment Opportunities Commission ("EEOC").  (*See* Def.'s Mem. Ex. L.)  On March 18, 2004, the EEOC denied Plaintiff's charge, and issued a right to sue letter.  (*See* EEOC Letter.)  On June 10, 2005, Plaintiff filed this action.  (*See* Pl.'s Compl.)  On January 6, 2006, Plaintiff filed a letter request for appointment of counsel.[1]  (*See* Paper No.12.)  On January 24,

_____

[1]  In that filing, Thomas stated; "If you are not able to fulfill my request [for an attorney] I don't have another choice but to drop the lawsuit." (Paper No. 12)

2006, this Court denied Plaintiff's motion for appointment of counsel.  (*See* Paper No. 13.)  On March 22, 2006, Defendant filed a Motion to Dismiss for Failure to State a Claim, or in the Alternative, for Summary Judgment.[2]  (*See* Paper No. 14)  On March 22, 2006, the Clerk of this Court sent Plaintiff a letter stating that "[she is] entitled to file, in opposition to this motion, any relevant materials . . . admitting, contradicting, or explaining the facts and matters asserted in the motion."  (Paper No. 15.)  Plaintiff has not responded to Defendant's motion.

## STANDARD OF REVIEW

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law.  In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), the Supreme Court explained that, in considering a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* at 248.  Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented."  *Id.* at 252.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion,"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v.*

---

[2]  This Court treats Defendant's motion as one for summary judgment because each of Defendants' arguments require that the Court consider matters outside the pleadings.  *See* Fed. R. Civ. P. 12(b); *Gadsby by Gadsby v. Grasmick*, 109 F.3d 940, 949 (4th Cir. 1997).

*Diebold*, Inc., 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005).  However, the opponent must bring forth evidence upon which a reasonable fact finder could rely.  *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).  "Once the movant has established the absence of any genuine issue of material fact, the opposing party has an obligation to present some type of evidence to the court demonstrating the existence of an issue of fact."  *Pension Ben. Guar. Corp. v. Beverley*, 404 F.3d 243, 246-47 (4th Cir. 2005) (citing *Pine Ridge Coal Co. v. Local 8377, UMW,* 187 F.3d 415, 422 (4th Cir. 1999)).  Rule 56(e) also requires that "affidavits submitted by the party defending against a summary-judgment motion contain specific facts, admissible in evidence, from an affiant competent to testify, 'showing that there is a genuine issue for trial.'"  *Id.* (quoting 10B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2740, 399 (3d ed. 1998)).  The mere existence of a "scintilla" of evidence in support of the nonmoving party's case is not sufficient to preclude an order granting summary judgment.  *Anderson*, 477 U.S. at 252.

This Court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences."  *Shin v. Shalala,* 166 F. Supp. 2d 373, 375 (D. Md.  2001) (citations omitted).  Indeed, this Court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial.  *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

<u>DISCUSSION</u>

**I.      Hostile Work Environment Claim**

Defendant treats Plaintiff's Complaint as raising a hostile work environment claim under Title VII.  (*See* Def.'s Mem. pp. 10-12; *see also* EEOC Letter (same).)  To establish a *prima facie* case of hostile work environment based on discriminatory animus due to her national origin, *i.e.*, Guatemalan-Hispanic, Plaintiff must show that: (1) she was subjected to unwelcome conduct; (2) which was based on her national origin; (3) which was sufficiently pervasive or severe to alter the conditions of her employment and to create a hostile work environment; and (4) there is a basis for imputing the conduct to the employer.  *See Baqir v. Principi*, 434 F.3d 733, 745-46 (4th Cir. 2006); *Ocheltree v. Scollon Products, Inc.*, 335 F.3d 325, 331 (4th Cir. 2003), *cert. denied*, 540 U.S. 1177 (2004).

The question of whether the degree of alleged hostility or abuse was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere actionable under Title VII is to be determined by examining the totality of the circumstances.  *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 184 (4th Cir. 2001).  The United States Court of Appeals for the Fourth Circuit has recognized the following factors to aid in the determination of pervasiveness: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; (4) whether the conduct unreasonably interfered with the plaintiff's work performance; and (5) what psychological harm, if any, resulted."  *Conner v. Schrader-Bridgeport Intern., Inc.*, 227 F.3d 179, 193 (4th Cir. 2000).      In this case, Plaintiff's allegations are limited to the following statements:

> I was the only supervisor with a Spanish accent, and since Chris Lang
> came he would always say in some of the management meetings

5

> "The employees who work in management position needs to speak
> well, how confident will the customer feels to bring the business to
> us if the employees do not speak well."  Chris Lang even gave and
> [sic] example, he said "One day I was asked to interview somebody
> by the HR manager, then I saw two people, I asked who is coming to
> the interview, one person replayed [sic] he is, I came to translate."
> Please request a copy of a tape from an unemployment hiring held on
> September 23, 2004 in the Glen Burnie Court House where you can
> hear how Rebecca Wallace accepted truthfulness of the above
> statements by Chris Lang.  Also, I had worked for Rebecca Wallace
> for long time in other companies, she never made any comments
> about my accent, until Chris Lang emphasized that employees must
> speak well, she also told me that since my parents moved in with me,
> my accent got worse.

(Compl. p. 2.)  Even viewing these allegations in the light most favorable to Plaintiff, a

reasonable jury could not find that the conduct alleged was based on Plaintiff's national origin,

let alone sufficiently pervasive or severe to alter the conditions of her employment.  *See*, *e.g.*,

*Brown v. Henderson*, 257 F.3d 246, 256 (2d Cir. 2001) (comments based on "workplace

dynamics unrelated to sex" insufficient to support a hostile work environment claim based on

sex); *Hardin v. SC Johnson & Son, Inc.*, 167 F.3d 340, 345-46 (7th Cir. 1999) (comments that

were non-racial in nature and addressed to multiple employees insufficient to support a hostile

work environment claim based on race); *Meritor Savings Bank FSB v. Vinson*, 477 U.S. 57, 67

(1986) (harassment must be "sufficiently severe or pervasive to alter the conditions of the

victim's employment and create an abusive working environment" in order to be actionable).

Defendant points out, moreover, that "this is the only conduct that Plaintiff puts forth to

demonstrate a hostile work environment."  (*Id*. at p. 12.)  To defeat summary judgment, Plaintiff

was required to set forth specific evidentiary facts raising a genuine issue of material fact for

trial.  *See* FED. R. CIV. P. 56 ("When a motion for summary judgment is made and supported as

provided in this rule, an adverse party may not rest upon the mere allegations or denials of the

adverse party's pleading. . . ."); *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (nonmoving party must set forth specific facts demonstrating a genuine issue of trial to resist summary judgment).  Plaintiff failed to meet this burden by not responding to Defendant's motion.  Accordingly, this Court grants summary judgment in favor of Defendant with respect to Plaintiff's hostile work environment claim.

## II.     Discrimination Claim

### A.       The *McDonnell Douglas* Standard

Plaintiff has not proffered direct evidence of discriminatory intent and, as a result, must rely on the familiar three-step burden-shifting model of circumstantial evidence of discrimination set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) and its progeny.  Although *McDonnell Douglas* dealt with allegations of racial discrimination, the test established in that case has been applied to charges of discrimination on the basis of national origin under Title VII.  *See*, *e.g.*, *Velez v. City of Chicago*, 442 F.3d 1043, 1050 (7th Cir. 2006).  In brief, the *McDonnell Douglas* burden-shifting framework requires first that the plaintiff prove a *prima facie* case against the defendant.  Once the plaintiff has proven a *prima facie* case, the burden shifts to the defendant, who must prove that the plaintiff was terminated for a "legitimate, non-discriminatory reason."  *Warch v. Ohio Casualty Company,* 435 F.3d 510, 514 (4th Cir. 2006).  If the defendant articulates a legitimate reason, the burden shifts back to  the plaintiff to prove that the reason proffered is a "pretext" for discrimination.  *Id.*

### B.       *Prima Facie* Case

Defendant treats Plaintiff's Complaint as raising a wrongful discharge claim under Title VII.  (*See* Def.'s Mem. pp. 9-10 & 12-14; *see also* EEOC Letter (same).)  In order to prove a

*prima facie* case for discriminatory discharge under Title VII, the plaintiff must show that: (1) she is a member of a protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position from which she was terminated and was performing to the standard legitimately expected by her employer, and (4) she was replaced by an individual outside of her protected class.  *Warch*, 435 F.3d at 513; *see also Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 941 (5th Cir. 2005); *Velez*, 44 F.3d at 1050.  In this case, Defendant does not address prongs one and four of the above test.  Prongs two and three, however, are discussed below.

Defendant contends that Plaintiff cannot satisfy the second prong—requiring an adverse employment action—because she voluntarily resigned.  (*See* Def.'s Mem. pp. 9-10.)  In this regard, Defendant relies heavily on *Shilling v. Rutherford Pediatrics, P.A.*, 346 F. Supp. 2d 828 (W.D.N.C. 2004).  In that decision, the court found that the plaintiff was unable to satisfy the termination component of her *prima facie* claim for wrongful discharge because, instead of accepting her employer's offer of continued employment, the plaintiff "abruptly took a leave of absence without permission."  *Id*. at 839.  The facts of *Shilling*, however, are distinguishable from the instant case.  For example, in this case "there is no dispute that management had reached the decision to terminate [Plaintiff]."  (Def.'s Mem. p. 10.)  There is also no question that Defendant attached conditions to Plaintiff's alleged resignation.  (*See* Def.'s Mem. p. 6 ("According to her letter of resignation, Ms. Thomas sought to make her resignation effective August 17, 2004.  However, management agreed to accept her resignation with an effective date of July 12, 2004.") (citations omitted).)  Finally, the EEOC Letter attached to Plaintiff's Complaint indicates that "[t]he evidence shows [that Plaintiff] requested that [she] be allowed to resign versus being terminated and [Defendant] agreed to accept [Plaintiff's] resignation."

(EEOC Letter.)  None of these facts—which bear on whether Plaintiff's decision to resign was

voluntary—were present in *Shilling*.  Accordingly, this Court does not find that, as a matter of

law, Plaintiff cannot satisfy the termination component of a *prima facie* case for wrongful

discharge under Title VII.[3]

Defendant also suggests that Plaintiff cannot satisfy the third prong of a *prima facie*

case—that she was performing adequately at the time of her termination.[4]  Specifically,

Defendant

submitted an affidavit from Plaintiff's supervisor indicating that Plaintiff failed to meet certain

deadlines affecting the processing of accounts for two clients just before her employment ended.[5]

(*See* Def.'s Mem. Ex. C.)  Plaintiff has offered no probative evidence with respect to whether she

was performing her job duties at a level that met Defendant's legitimate expectations at the time

---

[3]  This Court notes that the allegations made in Plaintiff's Complaint are insufficient to
support an argument that Plaintiff was constructively discharged.  *See generally Pennsylvania
State Police v. Suders,* 542 U.S. 129, 134 (2004) (an employee can be constructively discharged
if the working environment was so intolerable that resignation was an appropriate response).
Specifically, the conduct alleged in Plaintiff's Complaint does not suggest that Defendant
"deliberately made [Plaintiff]'s working conditions intolerable in an effort to induce [her] to
quit."  *Heiko v. Columbo Sav. Bank*, 434 F.3d 249, 262 (4th Cir. 2006) (citing *Matvia v. Bald
Head Island Mgmt., Inc.*, 239 F.3d 261, 272 (4th Cir. 2001)); DISCUSSION § I (addressing
Plaintiff's hostile work environment claim).

[4]  (*See* Def.'s Mem. p. 13 (highlighting the prong of the *prima facie* case that relates to
performing adequately at the time of discharge).)

[5]  This Court notes that Defendant has submitted exhibits to support the proposition that
Plaintiff failed to perform adequately throughout her employment.  (*See* Def.'s Mem. Ex. B-K.)
These exhibits suggest that Plaintiff failed to complete tasks assigned to her, experienced
difficulties with time-management, and was unable to overcome an ongoing conflict with
another employee.  (*Id.*)  In a June 2003 assessment, Plaintiff was ranked the poorest performing
employee within her job category.  (*Id.*)  Plaintiff received similarly low rankings until her
termination. (*Id.*)  Finally, Defendant notes that its decision to terminate Plaintiff was in accord
with its Corrective Action policy, which expressly allows for immediate termination where an
employee is negligent or fails to follow company policy.  (*See* Def.'s Mem. Ex. F.)

of her discharge.  Accordingly, this Court finds that Plaintiff has failed to establish a *prima facie* case of discriminatory discharge under Title VII.

### C.        Legitimate Business Reason

Even if Plaintiff could establish a *prima facie* case of wrongful discharge, her claims fail as a matter of law because Defendant has articulated a legitimate business reason for terminating Plaintiff's employment, and Plaintiff has forecast no evidence to suggest that this reason was a pretext for discrimination.[6]  Specifically, Defendant points to reports indicating that Plaintiff was terminated for poor job performance, which is an accepted "legitimate reason" for discharge. (*See* Def.'s Mem. pp. 4-5.)  *See*, *e.g.*, *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 n.4 (4th Cir. 1988) (noting that poor job performance is a legitimate business reason for discharging employee); *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 864 (7th Cir. 2005) (poor attitude and deficient performance are legitimate business reasons for not hiring a job applicant).  Because Defendant articulated a legitimate, non-discriminatory reason for its conduct, Plaintiff must present evidence that Defendant's proffered explanation is pretextual in order to survive summary judgment.  *See*, *e.g.*, *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 143 (2000).  In this case, however, Plaintiff has not responded to Defendant's motion for summary judgment and thus failed to demonstrate that Defendant's legitimate, non-discriminatory reason for terminating Plaintiff employment is a pretext for discrimination. Accordingly, Plaintiff's wrongful discharge claim must fail pursuant to the burden-shifting

---

[6] (*See* Def.'s Mem. p. 12 (characterizing argument as "plaintiff is not entitled to relief because JPMorgan Chase had a legitimate business reason for recommending plaintiff's termination").)

framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).[7]

CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED.  A separate Order and Judgment follows.


Dated: June 15, 2006                    /s/ _____
                                              Richard D. Bennett
                                              United States District Judge

---

[7]  This Court notes that employment decisions can be based on communication skills where an employee's lack of communication skills materially interferes with his ability to perform his job.  *See Jiminez v. Mary Washington College*, 57 F.3d 369, 380 (4th Cir. 1995) (concern over audience comprehension of a lecturer seeking tenure is legitimate because he must be able to communicate with students); *Odima v. Westin Tucson Hotel*, 991 F.2d 595, 601 (9th Cir. 1993) (refusal to transfer employee to a different job on the basis of his accent could be legitimate if the accent materially interfered with his ability to perform that job).